UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | No. 09 CR 383-16 |
| v. | ) | |
| | ) | **Chief Judge Rubén Castillo** |
| JESUS RAUL BELTRAN LEON | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the amended motion of Jesus Raul Beltran Leon ("Defendant") seeking expansive discovery "relating to the torture and psychological abuse of Defendant while in the custody of Mexican authorities at the behest of the United States government." (R. 549.) For the reasons stated below, the motion is denied.

## BACKGROUND

On September 11, 2014, a grand jury in this District returned a Seventh Superseding Indictment charging Defendant and others with conspiracy to import controlled substances into the United States, conspiracy to commit money laundering, and other offenses.[1] The indictment alleged that, between approximately May 2005 and 2014, the Sinaloa Cartel—a transnational drug trafficking organization based in Sinaloa, Mexico—was responsible for importing large quantities of cocaine and other drugs from Mexico into various U.S. cities, including Chicago. (R. 422 at 1-26.) The indictment alleges that Defendant acted as a "lieutenant" and narcotics broker for co-defendant Jesus Alfredo Guzman Salazar. (*Id.* at 6.) Defendant is alleged to have personally caused multi-kilogram quantities of cocaine and marijuana to be transported from Mexico into and throughout the United States in furtherance of the conspiracy. (*Id.* at 6-7.) Defendant is further alleged to have caused drug proceeds to be collected from customers in the

---

[1] The Seventh Superseding Indictment was filed under seal and does not appear on the public docket; however, it is the same in all material respects to the Eighth and Ninth Superseding Indictments, which have been publicly filed. (*See* R. 379; R. 422.) The Ninth Superseding Indictment is the operative pleading in this case.

United States and laundered and transferred from the United States to Mexico and elsewhere for the benefit of the Sinaloa Cartel. (*Id.* at 7.)

Based on these charges, on September 12, 2014, a warrant was issued for Defendant's arrest. (R. 562 at 3.) On or about November 10, 2014, the government submitted a provisional arrest warrant request to Mexican authorities, asking that Defendant be arrested and detained in anticipation of a request for extradition to the United States to face trial. (*Id.*) On November 16, 2014, defendant was arrested at his home by members of the Mexican Navy, also known as "SEMAR." (R. 549 at 8.) On March 27, 2015, the government submitted an extradition request to Mexican officials asking that Defendant be extradited to this District. (R. 562 at 4.) Mexico granted that request in December 2016, and in January 2017, Defendant was brought to Chicago. (*Id.*) He was arraigned before this Court on January 25, 2017. (R. 490.)

In December 2017, Defendant filed the present motion. (R. 549.) He claims that he was wrongfully held by SEMAR for several days after his arrest before being presented to a prosecutor in Mexico City, during which time he alleges that members of SEMAR threatened his family, suffocated him with plastic bags, bludgeoned him, shocked him with electrodes, and submerged him in water until he passed out. (*Id.* at 8-31.) He further claims that agents of the U.S. Drug Enforcement Agency ("DEA") were present during his arrest and detention and were aware of the abuse he was suffering. (*Id.* at 15, 19, 23.) He further claims that SEMAR has a consistent practice, known to American officials at the time of his arrest, of abusing arrestees. (*Id.* at 31-49.)

Based on these allegations, Defendant seeks vast discovery—encompassing more than 130 document requests—related to his torture claim. (*Id.* at 61-77; R. 562-1 at 2-5.) Among other materials, he seeks "[a]ll training materials provided by the U.S. government for training of the

SEMAR unit members in Quantico, Virginia, or elsewhere," (R. 549 at 74), any "written agreement" between DEA or other agencies of the U.S. government and SEMAR, (*id.*), any reports "documenting previous instances of torture or physical abuse by the SEMAR unit or members thereof," (*id.* at 75), records reflecting any equipment or funding provided to SEMAR "by any agency or other part of the U.S. government," (*id.*); "copies of all vouchers, bank statements, or receipts for payment by the U.S. government for expenses of that SEMAR unit," (*id.* at 76), "[a]ll police reports, D.E.A.-6 reports, or other official law enforcement reports in cases being prosecuted in the Northern District of Illinois concerning instances of alleged torture by Mexican government officials," (*id.* at 77), "the name of the Regional Security Officer who briefed the United States Ambassador on the operation that resulted in [Defendant's] arrest," (R. 562-1 at 3), and "[t]he official teletype reports to the United States Embassy regarding [Defendant's] seizure and arrest," (*id.*).

In February 2017, the government tendered certain discovery to Defendant responsive to his requests, including documents pertaining to an internal investigation conducted by the DEA's Office of Professional Responsibility as a result of Defendant's allegations. The government objects to having to produce any additional documents, and argues that Defendant's broad requests are irrelevant and improper. (R. 562.) The Court has fully reviewed Defendant's voluminous filings, the government's response brief, and the government's document production, including the unredacted version of those documents submitted *in camera*.

## ANALYSIS

"District courts have broad discretion with regard to discovery motions in criminal cases." *United States v. Delatorre*, 438 F. Supp. 2d 892, 900 (N.D. Ill. 2006). "There is no general constitutional right to discovery in a criminal case[.]" *Weatherford v. Bursey*, 429 U.S.

3

545, 559 (1977). Nevertheless, Federal Rule of Criminal Procedure 16 requires the government to provide certain types of information to the defendant upon request, including: the substance of any oral statement made by the defendant to a law enforcement agent; any relevant written or recorded statement by the defendant; a copy of the defendant's prior criminal record; documents or tangible objects that are material to preparing the defense or that were obtained from or belong to the defendant; results of a physical or mental examination, or of any scientific tests or experiments conducted; and documents the government intends to use during its case-in-chief. FED. R. CRIM. P. 16(a)(1)(A)-(G). In addition, the government has discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), separate and apart from its obligations under Rule 16. *See United States v. Agurs*, 427 U.S. 97, 107 (1976). *Brady* and its progeny require the government to disclose exculpatory evidence that is material to guilt or punishment, including impeachment evidence. *See Holland v. City of Chicago*, 643 F.3d 248, 255 (7th Cir. 2011); *United States v. Sanders*, 893 F.2d 133, 137-38 (7th Cir. 1990).

Defendant's requests do not fall within the express terms of Rule 16, but he nevertheless argues that the evidence may be relevant to a potential "outrageous government conduct" defense, which in his view would warrant dismissal of the charges in their entirety. (R. 549 at 49-52.) The Court disagrees. Although "the Supreme Court has not closed the door entirely" on the outrageous government conduct defense, the U.S. Court of Appeals for the Seventh Circuit has long declined to recognize it. *United States v. Smith*, 792 F.3d 760, 766 (7th Cir. 2015); *see also United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011) ("Outrageous government conduct is not a defense in this circuit."); *United States v. White*, 519 F.3d 342, 346 (7th Cir. 2008) ("[T]his circuit clearly and consistently has refused to recognize any defense based on . . . outrageous government conduct." (internal quotation marks omitted)).

4

Where the Seventh Circuit has even considered the potential viability of the defense, the circumstances involved entrapment or misconduct by the government in connection with the commission of the offense itself. *See United States v. Westmoreland*, 712 F.3d 1066, 1072 (7th Cir. 2013) ("[T]he defense has come into play only where the government's involvement created a crime or criminal enterprise that did not exist before, and where the government had to coerce the defendant to commit the crime by some unreasonable means."); *United States v. Dawson*, 425 F.3d 389, 396-99 (7th Cir. 2005) (Williams, J., dissenting) (suggesting that outrageous government conduct defense should be available where government brokered a "bounty" agreement with confidential informant, whereby informant would receive a share of forfeited proceeds if the defendant was convicted). That element is missing here, as Defendant raises no allegation that the government entrapped him into importing multi-kilogram quantities of drugs into the United States or otherwise had any involvement in the events underlying the indictment. Rather, his claims pertain to alleged misconduct surrounding his arrest and pretrial detention in Mexico. The Seventh Circuit has expressly rejected the argument that misconduct related to the government's efforts to bring a defendant to trial could ever warrant dismissal of the charges.[2] *Matta-Ballesteros v. Henman*, 896 F.2d 255, 260-62 (7th Cir. 1990) (holding that defendant, a Honduran citizen, could not pursue dismissal of criminal charges based on his allegation that agents of the U.S. Marshals Service had "kidnapped" him from his home in Honduras, beat him, and burned him with a stun gun, because "[f]or the past 100 years, the Supreme Court has consistently held that the manner in which a defendant is brought to trial does not affect the

---

[2] Defendant relies heavily on *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974), where the U.S. Court of Appeals for the Second Circuit granted dismissal of criminal charges based on a defendant's claim that he had been wrongfully arrested and tortured by U.S. government agents in Uruguay. *Id.* at 275. However, the Seventh Circuit has expressly declined to follow *Toscanino*, noting that the case has "ambiguous constitutional origins" and "no longer retains vitality" in light of intervening Supreme Court cases. *Matta-Ballesteros v. Henman*, 896 F.2d 255, 261, 263 (7th Cir. 1990).

5

ability of the government to try him"). If in fact Defendant was mistreated by U.S. government agents during his arrest or pretrial detention, he may have a civil remedy available under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See Matta-Ballesteros*, 896 F.3d at 262. But his allegations, even if true, would not exculpate him from the charges in this case.[3] *Id.* at 261 n.7. In short, the Court declines to permit Defendant to conduct the vast discovery he seeks in support of a defense that does not exist in this Circuit.

Defendant also argues that the discovery he seeks bears on a potential motion to suppress evidence "obtained as fruits of [his] arrest," under either *Miranda v. Arizona*, 384 U.S. 436 (1966), or a voluntariness analysis. (R. 549 at 52-54.) However, the government represents that it does not intend to introduce into evidence any items collected as part of Defendant's arrest, any post-arrest statements he might have made, or any other information obtained as "fruits" of his arrest. (R. 562 at 6-7.) As the government points out, the grand jury returned an indictment against Defendant two months before his November 2014 arrest in Mexico, relying on evidence wholly independent of his capture. That is the evidence the government intends to rely on at trial. (*See id.*) Should the government's position change, the Court would reconsider whether to permit certain limited discovery related to the voluntariness of any post-arrest statement made by

---

[3] Defendant makes a new argument in his reply brief that evidence pertaining to his mistreatment in Mexico may also be relevant to his sentence and is thus subject to disclosure under *Brady*. (*See* R. 568 at 8-9.) A reply brief is not the place to raise new arguments. *Gyorgy v. C.I.R.*, 779 F.3d 466, 472 (7th Cir. 2015). Additionally, Defendant fails to develop this argument or provide any case law in support of it. (*See* R. 568 at 8-9.) To the extent Defendant intends to argue that the harsh conditions of his pretrial detention warrant a lighter sentence, such an argument is of questionable viability in this Circuit. *See United States v. Campos*, 541 F.3d 735, 751 (7th Cir. 2008) ("Pretrial conditions of confinement are not included in the § 3553(a) factors, and we have not decided whether extraordinarily harsh conditions of confinement could ever justify a reduced sentence." (internal citations omitted)). But if Defendant wishes to raise such an argument, he already has information in his possession regarding the conditions he was exposed to during his pretrial detention. *See United States v. Dawson*, 425 F.3d 389, 393 (7th Cir. 2005) ("*Brady* requires disclosure only of exculpatory material known to the government but not to the defendant."). Information about the relationship between SEMAR and DEA, payments made to SEMAR agents, and similar information would not meaningfully advance an argument about the conditions Defendant experienced during his confinement. Thus, the Court finds Defendant's cursory argument an insufficient basis to order the expansive discovery he seeks.

Defendant in Mexico. But at this point, there are no "fruits" of the arrest to suppress, and thus, the Court declines to permit expansive discovery in support of a motion that need not be filed.

Aside from these problems, there is an additional barrier to Defendant's request. Defendant acknowledges that some of the information he seeks is not even in the hands of the U.S. government, but rather, is in the possession of Mexican authorities. (R. 549 at 61 ("It is expected that some of the facts or documents requested herein will not yet be known to, or in possession of, members of the United States Government, but are known to members of the Government of the Republic of Mexico.").) He asks the Court to "direct" the government "to file a request for disclosure of the specified information from the Mexican Government," using avenues available to American officials under the Treaty on Cooperation between the United States of America and the United Mexican States for Mutual Legal Assistance, signed at Mexico City on December 9, 1987, also known as "MLAT." (*Id.* at 61-62.)

Unfortunately for Defendant, the express terms of MLAT preclude his reliance on the treaty as a source of discovery. *See* MLAT, Article 1, para. 5 ("This Treaty is intended solely for mutual legal assistance between the Parties. The provisions of this Treaty shall not give rise to a right on the part of a private person to obtain, suppress, or exclude any evidence or to impede the execution of a request."). Additionally, this Court has "no authority to order the Executive Branch to invoke the treaty process to obtain evidence abroad for a private citizen." *United States v. Sedaghaty*, 728 F.3d 885, 916-17 (9th Cir. 2013); *see also Medellin v. Texas*, 552 U.S. 491, 506 n.3 (2008) ("[I]nternational agreements, even those directly benefitting private persons, generally do not create private rights or provide for a private cause of action in domestic courts." (citation omitted)); *United States v. Rosen*, 240 F.R.D. 204, 215 (E.D. Va. 2007) ("[T]he right to compulsory process extends only as far as a court's own process powers, and cannot be stretched

7

to include compelling the invocation of treaty process powers available only to the Executive Branch.").

Defendant may have other avenues available to him to obtain information about his arrest in Mexico, such as requesting a letter rogatory or seeking assistance from U.S consular officials. *See* 28 U.S.C. § 1781(a)(2), (b)(2); 22 C.F.R. § 92.54 *et seq*. He remains free to pursue these avenues if he chooses, but this Court will not order the government to seek these documents on his behalf through the treaty process. Taking such a step lacks a legal basis and would be contrary to the adversarial nature of our criminal justice system. *See United States v. Hach*, 162 F.3d 937, 947 (7th Cir. 1998) ("[W]hile the government has an obligation to tender to the defense all exculpatory records in its possession, it has no obligation to seek out such information from third parties."); *United States v. West*, 790 F. Supp. 2d 673, 678 (N.D. Ill. 2011) ("*Brady* does not require the government to conduct an investigation or gather information on defendants' behalf."). Accordingly, Defendant's motion is denied.

**CONCLUSION**

For these reasons, Defendant's amended motion for disclosure (R. 549) is DENIED. Nothing in this opinion should be construed as indicating that this Court in any way condones any alleged misconduct by either the Mexican or United States government in this case. Any such misconduct was a grave error and may be considered by this Court at an appropriate stage in the proceedings. This Court merely concludes that it has no valid basis to order the government to provide the additional discovery sought by Defendant at the pretrial stage of these proceedings. The parties shall appear for a status hearing on May 2, 2018, at 10:30 a.m. for the express purpose of setting a firm trial date for all defendants currently awaiting trial on the Ninth Superseding Indictment.

The *in camera* documents submitted to this Court, which have not been produced to the Defendant in unredacted form, will be sealed and made part of the record for purposes of any appeal.

ENTERED: _____

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: April 16, 2018**