UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 09 CR 383 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| JESUS RAUL BELTRAN LEON ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS *IN LIMINE***

Defendant Jesus Raul Beltran Leon is charged in the eighth superseding indictment with conspiring with members and associates of the Sinaloa Cartel to distribute multiple types of controlled substances (Count One), to import drugs into the United States (Count Two), and to commit money laundering (Count Five). Defendant now asks this Court to preclude the government from referring to co-conspirator—and co-defendant—Joaquin Guzman Loera (aka "El Chapo," or simply "Chapo") and the name "Sinaloa Cartel," and to prevent the government from eliciting certain testimony demonstrating defendant's affiliation with Guzman Loera. For the reasons set forth below, defendant's motions should be denied.

**I.  Defendant's Motions Regarding Guzman Loera And The Sinaloa Cartel Should Be Denied.**

This Court should permit the government to introduce evidence and testimony, and to make arguments, about defendant's charged co-conspirator, Joaquin Guzman Loera, and the cartel defendant joined and operated within, the Sinaloa Cartel. Contrary to defendant's asserted objections, this evidence is relevant, is not unduly

1

prejudicial, and does not risk misleading the jury. Fed. R. Evid. 401, 403. To the contrary, barring this evidence would be unduly prejudicial to the government.

A. The Indictment

The eighth superseding indictment alleges, and the government's evidence at trial will demonstrate, that defendant was a member of the Sinaloa Cartel, an organization that operated as an affiliation of drug traffickers and money launderers who coordinated and pooled their collective resources to transport, import, and distribute drugs, and to launder drug proceeds. Doc. 379. Specifically, under the leadership of Guzman Loera and Ismael Zambada Garcia ("Mayo"), Sinaloa Cartel members—including defendant—coordinated the importation of large quantities of cocaine from Central and South American countries to Mexico, the unloading and movement of those drug shipments within Mexico, and the movement of those and other drugs, including heroin, marijuana, and methamphetamine, across the Mexican-U.S. border so that the drugs could be distributed throughout the United States.

The indictment further details allegations regarding the hierarchy of the Cartel's leadership, and defendant's role within that hierarchy. Specifically, the indictment alleges that Jesus Alfredo Guzman Salazar ("Alfredo Guzman"), Guzman Loera's son, acted as a logistical coordinator for Guzman Loera and other Cartel members and associates, and in that role, caused multi-kilogram quantities of drugs to be transported from Mexico into the U.S. for distribution, and drug proceeds to be

2

laundered and transferred from the U.S. back to Mexico and elsewhere. Defendant acted as a lieutenant for Alfredo Guzman, who is his brother-in-law, to further the same goals of the conspiracy, and he also served as a narcotics broker within the Cartel.

In addition to describing defendant's role within the Cartel, the indictment also alleges how defendant and his co-conspirators—other Cartel members—accomplished the goals of the drug distribution and money laundering conspiracies. Through the pooling of collective resources and coordinated efforts, defendant and others caused the transportation of drugs from Central and South American by various means, including by aircraft, tractor trailers, and automobiles. The drugs were subsequently transported to locations along the Mexican-U.S. border and stored in stash houses, warehouses, and safe house. Couriers affiliated with the Cartel then smuggled drugs across the border and into the United States, and then stored them in stash houses and safe locations in Southern California. From there, members of the conspiracy directed that the drugs be distributed to other Cartel members, and wholesale customers, in multiple locations, including to Chicago-based individuals. To ensure the return of drugs proceeds to Mexico and elsewhere, defendant and other Cartel members used a shared network of money couriers and launderers who collected the drugs proceeds from customers, counted, packaged and then transferred and laundered the proceeds by various means, including bulk cash smuggling, wire transfers and currency exchange transfers.

3

To further the conspiracy, defendant and his co-conspirators engaged in multiple means of evading law enforcement and manners in which they protected their drug distribution activities.

> B. Defendant's Motions To Bar The Government From Referring to Guzman Loera and The Sinaloa Cartel By Name.

This Court should permit the government to refer by name to defendant's co-conspirator, protector, and ultimate boss, Joaquin Guzman Loera, and also the name "Sinaloa Cartel." This evidence is highly relevant, would not cause undue prejudice, and does not risk misleading the jury. Fed. R. Evid. 401, 403. Moreover, to require the government to excise this testimony and evidence at trial would unfairly negatively impact its presentation of evidence to the jury.

First, defendant's affiliation with the Sinaloa Cartel and Guzman Loera is relevant to the charged conduct. In order to prove the conspiracies alleged, the government must demonstrate that the conspiracy existed, and that the defendant knowingly became a member of the conspiracy with the intent to advance it. 7th Cir. Pattern Instruction 5.08(b) (2012). In part through the testimony of cooperating defendants who are former members of the organization, the government will establish the existence of the Sinaloa Cartel—a large group of individuals who have agreed to work together to distribute drugs and obtain drug proceeds. The witnesses will explain to some degree how the Cartel operated, including its methods and means, and scope of operations. Thus, testimony about and references to the Sinaloa Cartel help prove that the charged conspiracies existed.

4

Moreover, who defendant conspired with is also highly relevant and probative. Cooperating witnesses will testify that defendant worked directly under and with Cartel leaders Guzman Loera and his sons, Alfredo Guzman and Ivan Guzman (aka "Chapito"), to traffic in drugs. Such evidence is highly relevant and probative in part because it reflects defendant's role within the organization and thus his ability to access and traffic in large quantities of illegal drugs across borders, as alleged. Moreover, defendant's identity is likely to be contested at trial, and the defendants familial association with Alfredo Guzman, Guzman Loera's son, helps prove defendant's identity. Specifically, the government's evidence at trial will show that many conspiratorial communications intercepted over the wiretap were sent by an individual who was identified as the brother-in-law of Alfredo Guzman. At trial, through cooperator testimony, the government will establish that defendant and Alfredo Guzman are, in fact, brothers-in-law, and in turn establish that defendant is the user of the device in which the conspiratorial messages were sent to and from.

Second, to allow non-gratuitous references to the Sinaloa Cartel and Guzman Loera would not cause undue prejudice or mislead the jury—indeed, to not allow reference to those proper names would have a misleading and confusing effect on the jury. At trial, the defendant will not be prejudiced by the use of the name of the Sinaloa Cartel and its leader in part because the government will not seek to rely upon anything the jurors have previously heard or learned about the Sinaloa Cartel or its leader outside of the courtroom. Instead, the government will put forth evidence

5

*at trial*, including through cooperator and expert testimony, to explain the characteristics, scope, leadership structure, size, and means and methods of the Cartel and, most critically, defendant's role in the Cartel. It will be from that evidence, and not simply the proper names of the Cartel and its leader, that the government will ask the jury to draw upon when considering the evidence and the charges. Moreover, to ask the government to use pseudonyms in place of proper names that are woven through its case in chief would unfairly impact the government's ability to coherently explain its evidence to the jury. In other words, the government and its witnesses, many of whom will testify in the Spanish language and thus require interpretation, would be required to dance around these proper names to a degree that would drastically and negatively impact the government's presentation to the jury.

      C. <u>Any Concerns About Undue Prejudice Can Be Cured by Voir Dire and A Limiting Instruction</u>.

Finally, any concerns defendant has regarding the potential for undue prejudice can be fairly cured not by the drastic remedy of preclusion, but rather through voir dire and limiting instructions from the Court to the jury at trial. Specifically, the court can inquire of potential jurors during voir dire about any exposure to or prior knowledge of the Sinaloa Cartel and Guzman Loera. And to the extent any jurors are unable to set aside any prior exposure to information about the Cartel and its leader, they can be stricken from the panel for cause. Moreover, the Court could provide a limiting instruction to the jury before, during, and/or after the

6

presentation of the evidence regarding its obligation to only consider the evidence presented in the Courtroom, and that they are not to rely upon any outside knowledge or influences when considering the evidence. As this Court well knows, jurors are presumed to following instructions they are given. *U.S. v. Delatorre*, 581 F.Supp.2d 968, 979 (7th Cir. 2008).

### D. Defendant's Motions To Bar The Government From Eliciting Testimony Regarding Defendant's Encounter With Guzman Loera in 2001.

For many of the same reasons as set forth above, this Court should permit the government to elicit testimony regarding defendant's recounting of his encounter with Guzman Loera in 2001.

At trial, the government plans to elicit testimony from Co-Conspirator A regarding a conversation he had with the defendant within the past 10 years about an event that took place in 2001. Specifically, the government anticipates eliciting at trial that defendant told Co-Conspirator A that he was with Guzman Loera's son, Ivan Guzman, when Ivan picked up Guzman Loera following his escape from prison in 2001. Such evidence, admissible as statements of the defendant, is relevant to show defendant's relationship with and proximity to the leader of the Cartel, Guzman Loera. As witnesses will testify at trial, defendant often used his relationship with and proximity to Guzman Loera and his sons—who were referred to collectively as "Los Chapitos"—to further his own drug trafficking activities within the Cartel— here, by touting his proximity to the Cartel to someone he attempted to do business with. Moreover, his own statements regarding his relationship with Guzman Loera

7

and his family are highly relevant, as his close association with the leader of the organization is probative.

Finally, while defendant claims that such evidence is overly prejudicial, and would "stir strong feelings and opinions" and "cause the jury to hold [the evidence] against" defendant (Doc. 645 at 8), any such claims of undue prejudice can be alleviated as described above: through voir dire of potential jurors and appropriate limiting instructions.

*****

It was the defendant, and not the government, who chose to conspire with members of the Sinaloa Cartel, including its leader, Guzman Loera, to distribute drugs and launder drug proceeds. This Court should allow the government to prove up its case against the defendant using natural, relevant, and non-gratuitous references to the Sinaloa Cartel and its leader, Guzman Loera.

        Respectfully submitted,

        JOHN R. LAUSCH JR.
        United States Attorney

By:   /s/ *Erika L. Csicsila*
       ERIKA L. CSICSILA
       ANDREW C. ERSKINE
       Assistant United States Attorneys
       219 South Dearborn Street
       Chicago, Illinois 60604
       (312) 353-5300

Dated: April 3, 2019